UNITED STATES BAN KRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────X

In re:                                  Chapter 13
                                        Case No 17-36789- (cgm)

    Marc D. Kessman,

            Debtor(s).

───────────────────────────────X

**AFFIRMATION IN SUPPORT OF MOTION AUTHORIZING THE DEBTOR'S SALE UNDER 11 U.S.C. §§363(b)(1) and (f) AND POINTS OF LAW**

**TO HONORABLE CECELIA G. MORRIS, UNITED STATES BANKRUPTCY JUDGE**:

The motion ("Motion") of Marc D. Kessman, ("the Debtor"), by his attorneys, The Law Offices of Francis J. O'Reilly, respectfully represent as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b).

2. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§105 and 363, Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 6004-1.

### FACTUAL BACKGROUND

4. On October 23, 2017, an Order for relief under 11 U.S.C. Chapter 13 was entered upon a petition filed by the Debtor.

5. The bankruptcy petition and schedules indicate that the Debtor owns the real property located at 70 Athena Court, Mahopac, New York 10541 (the "property").

6. In or about June 11, 2018, the debtor met with J. PHILIP REAL ESTATE (the "broker") to discuss marketing and selling his property and agreed to retain the broker pending court approval. A motion to approve the broker was drafted and filed on presentment and on July 9, 2018, this Court entered an Order Approving Debtor's Retention of the broker.

7. Since the date of retention, the broker has used its best, professional efforts to market the residence at its market price employing all standards of professional Realtors. The property was initially listed at $850,000.00 on August 8, 2018to try and obtain the greatest possible return for the secured creditor. The sales price was reduced monthly until there was interest and offers. The best offer was for $632,000 but the purchaser's backed out before they signed the contract of sale. The property continued to be marketed and an offer was made from the current proposed Purchasers for a purchase price of $615,000.00 in January of 2019.

8. At the time of the filing, the Debtor's real property was encumbered by a first mortgage held by BANK OF AMERICA, N.A. pursuant to a mortgage in the original principal amount of $835,992.00 and recorded in the office of the Putnam County Clerk on 12/11/2007 in Book/Page 5216/306. **POC #1 – Bank of America**

9.  The original mortgagee listed on the recorded mortgage was Merrill Lynch. Merrill Lynch merged in to Bank of America by agreement affective July 1, 2011. **Exhibit "A"**

9. On February 17, 2019, the Debtor entered into an arms-length Contract of Sale with Richard Blasetti and Serena Blasetti, ("Buyers") to sell to his real property for the sum of Six Hundred Fifteen Thousand Dollars ($615,000.00).  The contract is subject to short sale bank approval and Bankruptcy Court Approval. **Exhibit "B"**

10. The proposed Buyers have worked diligently toward and have received a commitment for funding for an F.H.A. loan with Loan Depot and are currently working toward clearing the conditions of the commitment. **Exhibit "C"**

11. My office has prepared a preliminary Closing Disclosure and has forwarded same to the short sale creditor's counsel for their review. As reflected in the Closing Disclosure, no proceeds from the sale are going to Debtor and all proceeds of the sale, save expenses, are going to the secured creditor. **Exhibit "D"**

12. The Debtor desires to sell the real property to aide in the consummating of his Chapter 13 Plan.

13. The sale of the property will not result in prejudice to the first lienholder. The Debtor, through his professional real estate broker has professionally marketed the property, held open houses, placed same on M.L.S., began the listing at an $850,000.00 sales price and continually lowered the price to obtain the best price for the first lienholder, has had numerous showings and has been available and has aided in the selling of the home at its current market value and sales price. The actions of Debtor have resulted in the first lienholder obtaining maximum return at the actual value of the asset without the devaluation of the asset should it remain vacant for a lengthy period while the mortgagee seeks to sell same after the foreclosure sale is completed.

13. The Debtor makes this Application for an Order authorizing him to sell his right, title and interest in and to the property free and clear of all liens against the property.

## APPLICATION TO SELL ASSETS

14. By this Motion the Debtor seeks the entry of an Order: (I) authorizing him to proceed with the Sale of his property; (ii) approving the sale of the Assets, free and clear of all liens, claims and encumbrances, security interests and other interests, to Richard Blasetti and Serena Blasetti; and (iii) granting such other and further relief.

# ARGUMENT

## POINT I

### THE SALE OF THE PROPERTY IS A REASONABLE EXERCISE OF THE DEBTOR'S BUSINESS JUDGMENT AND SHOULD BE APPROVED

Bankruptcy Code §363 provides, in pertinent part, that "[t]he trustee (to wit: the debtor), after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. §363(b)(1). The terms of such a sale are generally within the sound discretion of the debtor. See, Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); See also Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 145 (2d Cir. 1993); In re Dial-A-Mattress Operating Corp., Case No. 1-09-419660(dem), 2009 Bankr. LEXIS 1801, at 12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test is the standard for Section 363 sales in this Circuit." (citations omitted)); In re Thomson McKinnon Sec., Inc., 120 B.R. 301, 307-08 (Bankr.S.D.N.Y. 1990). As recognized by the Second Circuit United States Court of Appeals in Lionel Corp., a court may approve a Section 363 application after expressly determining from the evidence presented that a good business reason exists to grant such application. In re Lionel Corp., 722 F.2d at 1063.

The Debtor has met the standard set forth in Section 363(b) of the Bankruptcy Code which permits a debtor to sell out of the ordinary course of business, if within the debtor's sound business judgment, the sale is beneficial to the estate. Section 363(b) provides, in relevant part:

> **(b)(1)** The trustee[1], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate....

---

[1] It is a widely accepted principal that the term Trustee in this Section includes the debtor when the debtor is a debtor in possession such as in a Chapter 11 or Chapter 13 filing.

Thus, under the Second Circuit standard, the debtor in this case should be permitted to sell the property as the Debtor has established a justified business decision in seeking to do so, to wit: avoiding a foreclosure sale and a disruption to the Debtor's financial affairs so that the Debtor may address his financial situation in an orderly manner enabling the Debtor to confirm his proposed Chapter 13 Plan. Once the debtor has established the justification, the Debtor will be permitted to sell the property outside of his Chapter 13 plan. In re Boston Generating, LLC, 440 B.R. 302 (Bankr.S.D.N.Y. 2010), provided that the debtor satisfies any of the conditions set forth in Section 363(f).

## POINT II

## THE DEBTOR MAY SELL THE PROPERTY FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCE

Pursuant to In re Boston Generating, LLC, 440 B.R. 302 (Bankr.S.D.N.Y. 2010), the debtor may sell the property free and clear of all liens and encumbrances under Section 363(f) of the Bankruptcy Code, provided that, the debtor sells the property for value and remits the proceeds of the sale to the secured creditors as they are defined by Section 506(a) of the Bankruptcy Code. Moreover, the debtor may sell the property free and clear of all liens and encumbrances if the debtor sells the property for the actual value of the property, as doing so satisfies the condition set forth in Section 363(f)(3). In this regard, Section 363(f) of the

Bankruptcy Code provides:
**(f)** The trustee may sell property under subsection (b) or (c) of this Section free and clear of any interest in such property of an entity other than the estate, only if–
(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. §363(f).

In the case of Boston Generating, supra., the Southern District Bankruptcy Court faced almost the identical issue presented herein. In Boston Generating, supra., the debtor sought to sell substantially all of its assets outside of the debtor's pre-confirmation of the Chapter 11 Plan over the Objections of the Second Lien holders that the debtor's proposed sale failed to satisfy any of the conditions set forth in Section 363(f), as the sale of the assets would not even satisfy the amount due in accordance with the first lien holder's lien. The court in overruling the Objection determined that the sale satisfied both the conditions set forth in Section 363(f)(3), as well as Section 363(f)(5), and permitted the sale. Id.

First, the court determined that the sale satisfied Section 363(f), as the court, rejecting the Second Lienholder's definition of value thereunder; to wit: that in order to satisfy this condition the debtor had to sell the property for a price greater than the amount of the secured creditor's prepetition liens. Therefore, as the debtor's sale did not even satisfy the liens of the first lienholder, the condition was not met. The court rejected this argument finding that "[t]he "value" of a lien is to be determined by reference to section 506(a) – that is, it is the amount by which the lienholder's claim is "actually secured" not the amount of the stated lien. Id. at 332. "The phrase 'value of such creditor's interest in §506(a) means 'the value of the collateral.' Id. (See also In re Beker Industries Corp., 63 B.R. 474 (B.Ct.S.D.N.Y. 1986). Thus, as the property was being sold for its "actual value" which was less even than the amount due on the first lienholder's, the sale qualified under the condition set forth in Section 363(f)(3) of the Bankruptcy Code. In Boston Generating, supra., the court concluded, without the aid of appraisals, that the amount of a proposed arms-length sale, established the actual value of the property. Id. In so holding, the court found:

Under *Beker* and the many decisions of other Bankruptcy Courts following its reasoning, I find that section 363(f)(3) is satisfied. To hold otherwise would effectively mean that most section 363 sales of encumbered assets could no longer occur either (a) absent consent of all lienholders (including those demonstrably out of the money) or (b) unless the proceeds of the prosed sale were sufficient to pay the face amount of all secured claims in full. If section 363(f)(3) and (as discussed below) Section 363(f)(5) are read in the manner suggested by the Second Lien

Lenders, it seems unlikely that a Court, under any circumstance, could approve a non-consensual section 363 sale. As both a practical matter and a matter of statutory construction, that cannot be the case. It is hard to imagine that Congress intended to so limit a debtor's power to dispose of encumbered assets, particularly where such disposition otherwise satisfies the requirements of section 363(b).

Second, the court determined, over the objection of the lienholders, that the sale for "actual value" met the condition set forth in Section 363(f)(5). In rejecting the argument of the Second Lienholder, the court held that same could be compelled in a legal or equitable proceeding to accept a money satisfaction of their liens, the court ruled: "Section 363(f)(5) does not require that the sale price for the property exceed the value of the interests. As recognized in a ... decision from a Bankruptcy Court in the Ninth Circuit, the existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5). " Id. at 333. (See In re Holan, Inc., 403 B.R. 866, 870 (Bankr.W.D.Wash. 2009).

Accordingly, as the Debtor's sale does satisfy the conditions if sale set forth in Section 363(f)(3) and 363(f)(5), the debtor's Motion should be granted.

**WHEREFORE**, the debtor respectfully requests entry of the Proposed Order and for such other and further relief as to the Court may seem just and proper.

Dated: Carmel, New York
      March 29, 2019

                                          /s/ Frank J. Corigliano
                                          Frank J. Corigliano, Esq.
                                          Law Offices of Francis J. O'Reilly
                                          Attorney for Debtor
                                          1961 Route 6
                                          Carmel, NY  10512
                                          (845) 225-5800