A-125—Residential contract of sale. 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

## NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.

This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

### Residential Contract of Sale

# Contract of Sale made as of
February 17, 2019 (2/17/19) BETWEEN
(MDF)

Marc Kessman
Address:    70 Athena Court, Mahopac, New York 10541
Social Security Number/ Fed. I.D. No(s):

hereinafter called "Seller" and

Richard Blasetti and Serena Blasetti
Address:    31 Watson Way, Putnam Valley, New York
Social Security Number/ Fed. I.D. No(s):

hereinafter called "Purchaser".

## The parties hereby agree as follows:

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address: 70 Athena Court, Mahopac, New York 10541

Tax Map Designation:

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below and garage door opener, ALL THAT MAY NOW EXIST AT THE PREMISES IN "AS IS" CONDITION
Excluded from this sale are furniture and household furnishings.

3. **Purchase Price.** The purchase price is    $ 615,000.00
payable as follows:
    (a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt or which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
    $ 21,525.00
    ~~(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:    $~~
    ~~(c) by a purchase money note and mortgage from Purchaser to Seller:    $~~
    (d) balance at Closing in accordance with paragraph 7:
    $ 593,475.00



~~4. Existing Mortgage. (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
    ~~(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of    percent per annum, in monthly installments of $    which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on~~
    ~~(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~
    ~~(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~
    ~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid~~



~~principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~

~~(c) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

~~5. Purchase Money Mortgage. (Delete if Inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:~~

~~(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $_____ for its preparation.~~

~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than _____ percent per annum and the total debt service thereunder shall not be greater than $_____ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~



6. **Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at *Key Bank, 981 Route 6, Mahopac, New York 10541* until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Esrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with

the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel. ,

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $ 500.00:

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 250.00                                    ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency.** (*Delete paragraph if inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause.*) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 45 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, ~~FHA~~ or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $593,475.00 : for a term of at least 30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a



Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the ~~date hereof or of the~~ date of the closing of title by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters. 

~~(b) (Delete if inapplicable) All obligations affecting the Premises, pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~ 

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) Seller has been known by no other name for the past ten years, except NA

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** See Rider attached hereto ~~Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or~~



~~otherwise) to Seller, to inspect the Premises before Closing.~~

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as any Title Company licensed in the State of New York shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14. **Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **Bargain and Sale Deed** in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.



15. **Closing Date and Place.** Closing shall take place at the office of: Francis J. O'Reilly, Esq., 1961 Route 6, Carmel, New York 10541 at 10:00 a.m. o'clock on or about ~~June~~ 21, 2019 or upon reasonable notice at the office of the Seller's Lending institution.

16. **Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) ~~The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a One family dwelling at the date of Closing.~~ *

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) ~~All plumbing (including water supply and septic systems, if any), heating and air-conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.~~ 🗸

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any

required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing. *Seller shall pay the transfer tax*

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use or Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear or such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. **The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect or the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy

* In the event there is no CO for the premises and improvements or the systems are not in Working order, then Purchasers may cancel the contract + their deposit will be refunded

or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects. Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage ✱ (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing. ✱ *and all other monetary liens*

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be



deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than: J. Philip Real Estate, 593 Route 6, Mahopac, NY and Houlihan Lawrence Village Green, PO Box 458, Bedford, NY 10506 ("Brokers") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

Continued on Rider attached hereto.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

**In Witness Whereof,** this contract has been duly executed by the parties hereto.

/S/ Marc Kessman                              /S/ Richard Blasetti
_____              _____
Marc Kessman,        *Seller*                Richard Blasetti,    *Purchaser*

                                             /S/ Serena Blasetti
_____              _____
                     *Seller*                Serena Blasetti,     *Purchaser*


Attorney for Seller: Frank J. Corigliano, Esq.    Attorney for Purchaser:  Toni Maida, Esq.
Law Office of  Francis J. O'Reilly, Esq.
Address:    1961 Route 6                          Address:  433 Manville Road
            Carmel, NY 10512                                Pleasantville, New York 10570
Email:      fcorigliano@mahopaclawyer.com         Email:  tmaida@wrenandmaida.com
Tel.: 845-225-5800          Fax: 845-225-5906     Tel.: 914-769-4000       Fax:

Receipt of the downpayment is acknowledged and the undersigned
agrees to act in accordance with the provisions of paragraph 6 above.    _____ *Escrowee*

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
### for
## RESIDENTIAL CONTRACT OF SALE

1.  WARNING: the mortgage commitment contingency clause for the Residential Contract or Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sales or residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2.  Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of closing in the contract and request that the expiration date of the commitment occur after the scheduled date of closing. Purchaser must comply with deadlines and pursue the application in good faith. The commitment contingency is satisfied by issuance of a commitment in the amount specified on or before the Commitment Date, unless the commitment is conditioned on approval of an appraisal. If the commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3.  If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4.  This clause assumes that initial review and approval of Purchaser's credit will occur before the commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the commitment.

5.  If, as has been common, the commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those commitment conditions, including forfeiture or the downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting purchaser may not recover any part of the downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6.  Purchaser may submit an application to a registered mortgage broker instead of applying directly to an Institutional Lender.

7.  This clause allows Seller to cancel if a commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the commitment, to allow Seller the option to avoid having to wait until the scheduled date of closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8.  Purchaser may want to add to paragraph 22 that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract or sale [alternative: if Seller is unable to transfer title under the contract of sale].

SELLER'S RIDER TO CONTRACT DATED          , 2019

BY AND BETWEEN

SELLERS:        Marc Kessman

AND

PURCHASERS:        Richard Blasetti and Serena Blasetti
PREMISES:        70 Athena Court, Mahopac, New York 10541

This rider shall become part of the contract for the sale of the Premises as listed above
by and between the Seller and Purchaser as herein listed, If any provisions of the attached
contract of sale or any other contract rider are in conflict to this rider, then the terms and
conditions of this rider shall control and vitiate any terms of the printed contract attached
hereto or such other rider.

1. Supplementing Paragraph 8 of the Printed Form of the Contract:

   a. Purchaser warrants and represents that Purchaser has assets, upon the receipt of
   the mortgage proceeds, sufficient to complete this transaction.

   b. This contract is not contingent upon an appraisal of the premises and the same
   shall have no effect on the purchase price, *however, the appraisal must
   be satisfactory to lender.* **(MOK)**

2. Supplementing Paragraph 9 of the printed portion of this Contract, the premises are to
be transferred subject to:

   a. Any state of facts which an accurate survey may disclose, provided title is not
   rendered unmarketable or uninsurable thereby and further to any state of facts
   which a survey inspection may disclose, unless same shall render title
   unmarketable or uninsurable, *or reveal encroachments or out of
   possession issues* **(MOK)**

   b. Possible minor encroachments of retaining walls, hedges and fences and minor
   variations between record lines and hedges, fences and retaining walls and
   changes or alterations in the lines of streets, roads or avenues shall not be an
   objection to title unless same shall render title unmarketable or uninsurable.

   c. Easement and/or grants of rights heretofore granted to municipalities and public
   and private utilities provided same do not interfere with the normal use of the
   premises and are not violated by existing structures or current use of the subject
   premises.

   d. Any covenants, restrictions, limitations, burdens, conditions, rights of way,
   easements, agreements or restrictions of record which are not violated by the

1

existing structures or use of the premises and which will not be violated by
continuing the same use and said structure. In the event that any of the foregoing
are violated, same shall not be deemed an objection to title provided a title
company will issue a title policy and affirmative insurance that said structures
may remain in their present location undisturbed, as long as the same shall stand.

e. Rights, if any, of utility and telephone and cable TV companies to maintain and
operate wires, cables and poles over and upon said premises.

f. Standard printed exceptions contained in the form of fee title insurance policy
then issued by the title insurance company insuring Purchaser's title to the
Premises.

3. As a material part of the consideration to be received by the Seller under this
agreement as negotiated and agreed to by the Purchaser and the Seller, the Purchaser
acknowledges and agrees to accept the property in "as is" condition at the time of
closing, including, without limitation, any hidden defects or environmental conditions
affecting the property. The Purchaser acknowledges that the Seller has not made any
representations, warranties, promises, covenants, agreements or guarantees in respect
to:

(a) the physical condition or any other aspect of the property including the structural
integrity of any improvements, availability and quantity or quality of water, sewer
pipes or sewer hookup, plumbing and electrical systems, condition age or quality of
the roof, condition age or quality of the above-ground or buried oil tanks, stability of
the soil, susceptibility to flooding, sufficiency of drainage, water leaks, water damage,
mold or any other matter affecting the stability, integrity, or condition of the property
or improvements;

(b) the conformity of the property or the improvements to any zoning, land use or
building code requirements or compliance with any laws, rules, ordinances or
regulations of any federal, state or local governmental authority, or the granting of any
required permits or approvals, if any, of any governmental bodies which had
jurisdiction over the construction of the original structure, any improvements and/or
any remodeling of the structure; and

4. In the event that the check given as a down payment and delivered by the Purchaser
to the Seller upon the execution of this contract is dishonored for any reason by the
bank upon which it is drawn, then the Seller, in addition to any other rights and
remedies which they may have, may declare this contract null and void, and at an end,
and thereupon Seller shall be relieved of and released from all obligations hereunder

2

5. The parties agree that if, for any reason whatsoever, Seller is unable to deliver the subject premises to Purchaser in accordance with the provisions of this Contract, Seller shall not be required to take any action or proceeding or otherwise incur cost or expense.

6. Supplementing paragraph 18, heating fuel, if any shall be apportioned. A certificate from the dealer supplying the fuel to the Premises will be sufficient evidence as to the quantity and price of fuel based upon measurements made within three (3) days of the date of closing.

7. This Contract may be executed by facsimile, pdf, or other electronic signature. Such signature shall be deemed an original for all purposes and shall be binding and enforceable by and upon the parties. This contract may be executed in one or more counterparts which, when taken together, shall constitute a single agreement.

8. The balance of the purchase price to be paid at closing shall be paid by certified or official bank check drawn upon a bank doing business in New York State. Pursuant to paragraph 7 of the printed form, the following shall not be considered acceptable funds hereunder: (a) third party endorsed checks, whether certified or bank checks; (b) uncertified funding company checks.

9. The personal property to be conveyed pursuant to the printed contract shall be to the extent that said personal property exists upon the subject premises, and shall be deemed transferred to and conveyed to the Purchasers under the Deed of conveyance to be delivered, but it is understood and agreed that no part of the purchase price shall be deemed to have been paid by the Purchasers for same and that the property transferred hereunder shall be deemed to have been transferred without additional consideration.

10. For purposes of construction of this contract any deletions or cross-outs shall be treated as if they were never included herein.

11. It is specifically understood and agreed by the parties hereto that the acceptance and delivery of the deed of conveyance at the time of closing of title hereunder, without specific written agreement, which by its terms shall survive such closing of title, shall be deemed to constitute full compliance by Sellers with the terms, convenants, and conditions of this contract on their part to be performed.

12. The execution and delivery of this Contract of Sale by Purchaser and the delivery thereof to Seller shall have no binding force and effect on Seller unless and until Seller shall have executed this Contract of Sale.

13. Upon the receipt of the fully executed contract of sale and rider's thereto, Purchaser will immediately order a title report but in any case, not later than seven days therefrom.

3

14. When executed by Purchaser, this agreement shall constitute an offer by Purchaser to purchase the premises upon the terms and conditions herein above set forth. The execution and delivery of this Contract of Sale by Purchaser and the delivery thereof to Seller shall have no binding force and effect on Seller unless and until Seller shall have executed this Contract of Sale.

15. The parties hereby authorize their respective attorneys to agree to any changes in dates and time periods provided in this agreement (via e-mail or otherwise) and to initial any contract modifications and deletions.

16. If Seller(s) are unable to transfer title to Purchaser(s) in accordance with this contract, Seller(s)' sole liability shall be to refund all money paid on account of this contract together with the costs of both survey and title examination. Upon such refund and payment, this contract shall be considered cancelled, and neither Seller(s) nor Purchaser(s) shall have any further rights against the other.

17. As a condition precedent to the Seller holding the Purchaser in breach and/or default of this agreement, the Seller must provide Purchaser and Purchaser's attorney with written notice of default and ten (10) days within which to cure any such default.



18. This Agreement is contingent upon Seller's receipt of written consent from all existing secured lenders and lienholders ("Short Sale Lenders"), no later than 5:00 P.M. on ~~June~~ 14, 2019 ("Short Sale Contingency Date"), to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the subject real property (the "Property"), to pay the existing balances on loans secured by the Property, real property taxes, brokerage commissions, closing costs and other monetary obligations which by the terms of the Contract of Sale, the Seller is required to pay and discharge (including but not limited to title charges, documentary transfer taxes, prorations, retrofit costs, repairs, etc.). If Seller fails to give Purchaser written notice of all existing Short Sale Lender consents on or before the Short Sale Contingency Date, either Seller or Purchaser may cancel this Contract in writing and Purchaser shall be entitled to the return of Purchaser's down payment. Seller shall reasonably cooperate with existing Short Sale Lenders in the Short Sale process.

19. Purchaser and Seller understand that Short Sale Lenders: [a] are not obligated to accept a short sale; [b] may require Seller to forward any other offer received; and [c] may accept other offers. Short Sale Lenders may require that in order to obtain their approval for a short sale, some terms of the Contract of Sale, such as the date of the Closing may be amended, or Seller may be required to sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Seller and Purchaser do not have to agree to any of Short Sale Lenders' proposed terms. Neither the Purchaser, the Seller, nor the Broker(s) has control over whether Short Sale Lenders will consent to a short sale or to any act, omission or decision by any Short Sale Lender in the short sale process.

4

20. Purchaser and Seller acknowledge that each may incur costs in connection with rights or obligations under the Contract of Sale. These costs may include but are not limited to payments for loan applications, inspections, appraisals and other reports. If Short Sale Lenders do not consent to this transaction or if either party cancels this Contract, such costs will be the sole responsibility of the party who incurred them.

21. Seller has been informed and is aware that a short sale may have credit or legal consequences and may result in taxable income to the Seller. Seller is advised to see advice from an attorney, certified public accountant or other expert regarding the potential consequences of a short sale.

22. Seller and Purchaser are advised that in the event the Home Equity Theft Prevention Act is applicable to the within transaction, that Seller and Purchaser shall cooperate and obtain the advice of their respective counsel, to comply with all of the terms, conditions and provisions of said Act and in particular, with any notification requirement to Seller of a right of rescission if the Purchaser is deemed to be an "Equity Purchaser" within the meaning of the Act.

23. The Seller has filed a petition for Chapter 13 Bankruptcy in the Bankruptcy Court for the Southern District of New York, Poughkeepsie. The attorney for Seller represents that the firm has been approved by the bankruptcy court as attorney for such sale and that the real estate broker, J. Philip Real Estate, has also been approved by the court. As the property is included in Seller's bankruptcy estate, all aspects of this contract of sale is and shall remain wholly subject to the approval of the bankruptcy court.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals this *17th* day of

*February*____, 2019.

/s/ *Richard Blasetti*
Purchaser

/s/ *Marc Kessman*
Seller

/s/ *Serena Blasetti*
Purchaser

_____
Seller

5

SECOND RIDER ATTACHED TO AND FORMING PART OF CONTRACT OF    SALE
BETWEEN **KESSMAN**, AS SELLER, and **BLASETTI**, AS PURCHASER

---

1.    Seller agrees to deliver all keys, garage door
openers and security codes, warranties and manuals, if any, at
time of closing.

2.    Seller represents that he has no knowledge of any
pending or threatened zoning, planning or other hearing
or proceeding, investigation or litigation, except for pending
foreclosure action which is currently stayed by sellers chapter
13 bankruptcy, in connection with the subject premises and
property, nor has Seller received any notice of claim or
violations of any zoning, planning or wetlands regulation by any
public agency affecting the premises or the property of any
adjoining landowner.  Seller agrees to promptly advise the
Purchaser of any such hearing, proceeding, notice, investigation
or litigation in connection with an event or occurrence affecting
the subject premises, and property or the premises and property
of any adjoining landowner of which Seller becomes aware.

3.    Throughout the period of this Contract, Sellers shall
maintain the premises in its usual and normal condition,
including maintaining the lawn and snow removal as appropriate.
Seller shall not remove any trees, shrubs or plants from the
premises.

4.    In the event of any conflict between the terms and
provisions of this Second Rider and those contained in the
printed form of Contract of Sale, and its Rider to which this
Rider is annexed, the terms of this Second Rider shall govern.

5.    Sellers represent to the best of their knowledge
knowing that Purchasers are relying thereon:

A.    There are valid Certificates of Occupancy for the
premises (including the garage) as they now stand.

B.    The septic tank and leaching fields, if any, are
located entirely within the boundaries of the premises
herein conveyed and serve no other premises.

, C.    If the premises are supplied by a well and pipes,
said well and pipes are entirely within the premises herein
conveyed and serve no other premises.

D.   The roof will be free of leaks and the basement free of standing water as of closing.

E.   No hazardous wastes or hazardous materials of any kind have been placed upon the premises;

F.   There are no easements or rights of way other than utility easements and the drainage easement and serve the subject premises only;

6.   Seller is not obligated to spend any money to cure or take any action to cure under this contract.  Buyers' sole remedy in regard to any property condition or title issue will be to cancel the contract, in which case the buyers' deposit will be immediately refunded.

7.   This Contract and Rider can be executed with original, faxed and e-mail signatures in one or  more counterparts, each of which will be deemed to be an original copy of this Contract and all of which, when taken together, will be deemed to constitute one and the same Contract.

8. Seller shall allow access to the property for the purpose of an appraisal and final walk through.

/S/ Richard Blasetti
Purchaser

/S/ Serena Blasetti
Purchaser

/S/ Marc Kessman
~~Purchaser~~ Seller   MJK

_____
Purchaser

3